UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL RODRIGUEZ,

        Plaintiff,

NO.  3:01CV92 (GLG)

FILED

2004 MAY -3 P 4: 36

DISTRICT C...
NEW HAVEN, C...

v.

5/3/04

ENVIRO EXPRESS, INC. and
ENVIRONMENTAL WORKERS ASSOCIATION,

        Defendant.

## PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE

The Plaintiff, Michael Rodriguez, respectfully requests that the Court preclude Defendant from introducing any evidence of Plaintiff's criminal record in the trial of this matter, both arrests and/or convictions, as well as any evidence of scars or tattoos on Rodriguez's body. Plaintiff submits that any possible probative value of said record would unduly prejudice him. Plaintiff submits that there is no probative value to any evidence or mention of any scars or tattoos on Rodriguez's body, and any attempt to introduce of such would merely be to improperly sway the emotions of the jury, and thus unduly prejudice him.

## LEGAL STANDARD

Federal Rules of Evidence 402 states "(E)vidence which is not relevant is not admissible". FRE 403 states that relevant evidence may be excluded "if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...". FRE 609 states that "(F)or the purpose of attacking the credibility of a witness shall be admitted if the crime was punishable by death of imprisonment in excess of one year ... if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused; and ... if it (the crime) involved dishonesty or false statement, regardless of

the punishment." 609 also limits introduction of such convictions to those which happened less than ten years from the date of the conviction and/or release from confinement "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Further, "evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence".

## RODRIGUEZ'S POLICE RECORD

Michael Rodriguez does have a criminal record. His record of arrest, obtained from the City of Bridgeport Police Department (Exhibit A), is provided. The majority of these are more than ten years old, and only one even arguably could be said to involve "dishonesty or false statement".

In 1987 the police made a raid of the apartment building in which Rodriguez lived, as there were claims of drug sales from that building. Mr. Rodriguez merely was standing in front of the building at the time. All individuals there were arrested, including bystanders, such as Rodriguez. All charges against him were dismissed. As such there is absolutely no probative value.

In 1987, Rodriguez was arrested for driving with a suspended license of an unregistered motor vehicle. The car he was driving was not his own, and he was unaware that the car was unregistered. He was fined a total of $75.

In 1990, Rodriguez was fined $53 for a motor vehicle offense, and $100 for driving without a license. In 1991, he was fined $300 for driving with a suspended license.

In 1996, Rodriguez was involved in a domestic dispute with his girlfriend. The police responded, and both were arrested. The charges against Rodriguez were dismissed.

In 1999, Rodriguez was involved in an auto accident. When the police arrived, Rodriguez produced an expired insurance card. As a result, he was charged with forgery and failure to maintain insurance on his automobile. The records are unclear as to the charge, but the memorandum from the Court Clerk (Exhibit A) shows that the charge was CGS 531-140, which is a misdemeanor. The record shows he was given a conditional discharge.

None of these arrests are related to the case in question. They arise from:

1. Living in a building where others may have sold illegal drugs;

2. Motor vehicle incidents; or

3. Domestic disputes.

Not only are these in large very minor offenses, but the majority of these are more than ten years old. As such, there is little or no probative value, but the introduction into evidence would be substantially prejudicial to Plaintiff, useful only in an attempt to smear him in front of the jury. Further, Defendant has given no written notice of intent to use such evidence. As such, they should be excluded.

## RODRIGUEZ'S SCARS

In 1987, Mr. Rodriguez was in Seaside Park in Bridgeport, Connecticut. A car drove by, and fired several shots into the crowd there. Rodriguez was hit with one bullet, and was treated at Bridgeport Hospital leaving a scar. At his deposition, Rodriguez was asked "is it correct you have a bullet wound?" by defense counsel (Exhibit B, relevant portion of deposition transcript of Michael Rodriguez). No follow up questions were asked. Based upon this, it is apparent that

defendant knows there is no probative value in this scar, but intends to raise the issue in a blatant attempt to prejudice the jury against Rodriguez. As such, any mention of any scars of Rodriguez should be excluded from this trial.

By:

The Plaintiff - MICHAEL RODRIGUEZ

MICHAEL T. PAES, ESQ. - Fed. Bar # CT19303
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482
203-270-6441

CERTIFICATION - This is to certify that a copy of this Motion *in Limine* was sent, via first class mail, postage prepaid, on this date to:

Attorney Timothy Butler
Attorney Joseph Williams
Tibbetts, Keating & Butler, LLC
43 Corbin Drive, PO Box 5
Darien, CT 06820-0505

MICHAEL PAES

# EXHIBIT A



STATE OF CONNECTICUT
OFFICE OF THE CLERK
SUPERIOR COURT, G.A. 2

TELEPHONE #
(203) 579-6560

172 Golden Hill Street, Bridgeport, Connecticut 06604

TO WHOM IT MAY CONCERN:

The Undersigned Hereby Certifies That The Records Of This Court Show The Following:

DOCKET NUMBER ___CR99-147398___

STATE VS. ~~Rodriguez, Michael~~

CHARGE ___Forgery 3rd (Sub Info)___

CONN. GEN. STATS. SEC. ___53a-140___

DISP. ___6 mos E/S 1yr Cond discharge (Felony)___

DATE OF DISPOSITION ___5-6-99___

DATE ___5-13-03___

CLERK ___[signature]___

DONT ACCEPT WITHOUT COURT SEAL.

An Equal Opportunity/Affirmative Action Employer
www.jud.state.ct.us

# RECORD OF ARREST

**Rodriguez Michael**

**POLICE DEPT. — BRIDGEPORT, CONN.**

Address: 1351 State St
Address: 1818 NORTH AV
Address: 189 WEBER AVE - BPT
Address: 36 TOM THUMB ST, BPT, CT

| Sex | Age | Date of Birth | Social Security No. | | Place of Birth |
|---|---|---|---|---|---|
| M | 16 | 11/23/70 | 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 | | BPT |

| Color | Height | Weight | Build | Complexion | Hair | Eyes | Glasses | Marital Status |
|---|---|---|---|---|---|---|---|---|
| P | 5'5" | 160 | MED | L/Fair | BLK | Hazel | | SINGLE |

Nose: Pointed  Teeth: Gold V1s  Scars-Moles-Tattoos: LEFT LEG BULLET SCAR OTHER HOLE ANKLE
F.B.I. No.: 236145316 CT

| Arrest No. | Date | | | Officer | Charge | Disposition |
|---|---|---|---|---|---|---|
| 87-8482 | 6 | 22 | 87 | | Conspiracy | |
| | | | | | Tampering with Evidence | Nolle 9-30-87 |
| 87-8675 | 06 | 28 | 87 | | Unreg. M.V. | $35 7-20-87 |
| | | | | | No Oper. Lic | $60 7-20-87 |
| 90-5583 | 5 | 6 | 90 | | UNSAFE MOVEMENT | $53 5-23-90 |

| Arrest No. | Date | | | Officer | Charge | Disposition |
|---|---|---|---|---|---|---|
| 90-9858 | 08 | 06 | 90 | | NO Ins. Oper. | $100 7-20-90 |
| 91-5358 | 5 | 13 | 91 | | OPER II/SUSP | $300 6-17-91 |
| | | | | | FLR. DRV. ESTAB. LANE | Nolle 6-17-91 |
| 93-06180 | 05 | 07 | 93 | | FTA 1st (#93-01571) | |
| 96-6670 | 10 | 19 | 96 | | ASSAULT 3RD | |
| | | | | | DOMESTIC VIOLENCE | |
| 99001843 | 03 | 08 | 99 | | ★FORGERY 2ND(W) 9034216 | ★1 E/S Prob 6M 6M 1yf 5-6-99 |
| | | | | | FLT TO MAINTAIN REQUIRED INSURANCE (W)9034216 | NP-5-6-99 |

need Dispositions on the above →
★ Fatal or misdemeanor +6 Mos Jail

# EXHIBIT B

1   the year 2001?
2       A.   No, I don't remember that either.
3       Q.   Sir, do you have copies of your
4   2000 and 2001 tax returns?
5       A.   No.  They got lost in my moving
6   from -- moving to house to apartment to
7   apartment.
8       Q.   Sir, who prepares your tax returns?
9       A.   I had them done through X-Bankers
10  cashier place in Bridgeport, Connecticut.
11      Q.   Do you know whether or not they
12  keep a copy of your tax returns?
13      A.   I'm not too sure that they do.
14  They do now.
15      Q.   Sir, have you ever been arrested
16  before?
17      A.   Yes, I have.
18      Q.   And when was the first time you
19  were arrested?
20      A.   Dating since when?
21      Q.   The very first time you were
22  arrested?
23      A.   Back in '87 for interference with
24  police work.
25      Q.   Tell me about that?

1   A.   Where I lived they used to sell
2   drugs, and they raided it one time, and I
3   happened to be there in front of my building
4   so they just took everybody basically so they
5   let me off, and then I got arrested for that
6   and then I got arrested again.
7   Q.   Let's stick with this first time.
8   Were you convicted of anything the first time
9   you were arrested?
10  A.   I was.  I have my criminal record
11  with me.  No.  I was just charged with
12  interfering with police work.
13  Q.   When was the next time you were
14  arrested?
15  A.   I don't remember that one too well.
16  It was same scenario.
17  Q.   Were you convicted that time?
18  A.   No.  It was the same outcome.
19  Q.   And when was the next time you were
20  arrested after that?
21  A.   I was arrested for driving with a
22  suspended license.
23  Q.   And do you recall when that was?
24  A.   No, I don't really remember the
25  dates on those.

1    Q.    And what was the outcome of that?
2    A.    Suspension of my license.
3    Q.    Where were you arrested for driving
4  a suspended license?
5    A.    Trumbull.
6    Q.    Why was your license under
7  suspension at that time?
8    A.    I was driving my friend's car, and
9  his mother had no insurance and she failed to
10 put insurance on it when we got into an
11 accident, so when I went to court they took
12 my license because I failed to insure the car
13 which was not on my record.
14   Q.    When was the next time you were
15 arrested after that?
16   A.    If I can recall, I got arrested
17 again for that, for driving with suspended
18 license.
19   Q.    And what was the outcome of that?
20   A.    I got more time for suspended
21 license that they used on so I ended up
22 having to get an SR22 form insurance to
23 insure my license to get it back.
24   Q.    And when was the next time you were
25 arrested after that?

1   A.   I was arrested for assault.
2   Q.   Okay. Tell me about that?
3   A.   Disputing with my ex-girlfriend.
4   Q.   And tell me more about that, what
5   happened?
6   A.   Basically we just had a little too
7   much to drink, and things got out of hand and
8   the cops came, and we were both arrested.
9   Q.   And what was the outcome of that?
10  A.   Breach of peace and, if I'm
11  correct, that's it. That was it. I can't
12  remember that.
13  Q.   And when was the next time you were
14  arrested after that?
15  A.   Oh, the next time I was arrested, I
16  was arrested for fraud for not carrying
17  insurance on my car. I got into an accident.
18  Q.   And what was the basis of the fraud
19  charge against you?
20  A.   The basis was that I showed the
21  officer expired insurance card so they issued
22  a warrant because under Connecticut state law
23  and basically they gave me a felony second
24  for that for not carrying insurance on the
25  car.

1   Q. You were actually convicted of
2 committing fraud, were you not?
3   A. Yes.
4   Q. When was the next time you were
5 arrested after that?
6   A. That's it that I could remember. I
7 haven't been arrested since.
8   Q. Sir, is it correct that you have a
9 bullet wound?
10   A. Yes.
11   Q. How did you happen to obtain that
12 bullet wound?
13   A. It was a drive-by in Seaside Park
14 back in '87, '86. I'm not too sure of the
15 year, but we were all hanging out in the
16 park, and some car drove by started shooting
17 at the whole crowd, basically, and I got
18 caught in the foot. I was rushed to the
19 hospital at the time. Seaside Park, by the
20 way, Bridgeport, Connecticut.
21   Q. Sir, you mentioned that -- well,
22 who told you that you were terminated from
23 Enviro?
24   A. Willy Daley told me that I was
25 fired, that Bill Malone told him to tell me